Chaffinch, et al., a caption that's a bit misleading, and that Sgt. Foraker has settled and is not part of this appeal and reality. At this time, Mr. Neuberger. Yes, sir. Go forward, please. May it please the Court, my name is Steve Neuberger, and together with my co-counsel, Tom Neuberger and Warren Haverly, we represent the plaintiff's appellants in this case, Master Corporals Wayne Warren and Kirk Price. I'd like to save one minute for a rebuttal, Your Honor. Great. Defendants tried this case on a theory that the whistleblower plaintiffs were derelict and neglectful in their job duties and were thus to blame for the destruction of the FTU. To rebut this false factual claim, plaintiffs introduced extensive record evidence about just what exactly their job duties actually were. Because if plaintiffs had no duty to maintain the range, then they had no subsidiary job duty to speak out about its condition. That's a critical question in this appeal, is it not? That is, what their job duties, what their job functions were. Yes, Your Honor, it is. Especially in light of Garcetti. Especially in light of Garcetti, which came down on the very last day of trial, Your Honor. Now, the jury resolved this fact dispute for plaintiffs when they rejected the defense theory of the case, and that jury determination is conclusive of this disputed fact, that plaintiffs' job duties as expert firearms instructors at the FTU did not include blowing the whistle on health and safety hazards, blowing the whistle on government misconduct that had caused the problems in the first place, and doing maintenance. It did not include certain maintenance and cleanup responsibilities? It did not include the cleanup responsibilities of putting their hands into the toxic goo, of cleaning up the hazardous materials behind the bullet traps. Well, what level of specificity in the definition or explication of job functions does Garcetti require here? Well, Your Honor, Garcetti talks about that you can't have excessively broad job descriptions. It explicitly says that. It says that in response to something said in the dissenting opinion, which says that employers can then gut free speech protections for employees by having an excessively broad job description. I want to hear, five always beats four, so I want to hear what the majority gave us. And so the five was responding to that and said you can't have excessively broad job descriptions. You have to take a practical approach to job duties. You have to look at the duties that the employees were paid to perform and were expected to perform. Isn't the question, isn't that an aspect of whether or not the activity is in fact protected? And isn't this defined for the court rather than the jury? Because the court, as a matter of law, takes the determination of whether the activity is First Amendment protected. And the job duty goes into an aspect of that. It does, but if there's a fact dispute on the underlying issue, the jury has to resolve that. Your Honor, it's like in the quality of community context. I don't think that's true, is it? I think it is, because if there's a fact dispute as to what actually happened, if there's a fact dispute as to what plaintiff's job duties actually were, there's a fact dispute before the court can make that determination. And it is a determination of law. That underlying fact dispute has to be resolved. It's like in the qualified immunity context, Your Honor. What's the fact dispute here? Whether plaintiff's job duties included performing hazmat maintenance, whether the plaintiff's job duties included blowing the whistle. But isn't that determined, though? I would think the fact dispute would be like an issue as to whether they did this, but that it's a legal conclusion as to whether that was part of their job, if in fact they were doing it. But, Your Honor, they didn't have protective equipment. They didn't have training to do those types of things. Irrespective of that, not what they didn't have, but what did they do? And did Warren admit in his deposition that it was part of his job function, that, in fact, he did deal with watering the bullet trap, unclogging pumps, replacing filters? I mean, that's uncontested, is it not? That that happened in the past? Yes, it is. And it's also uncontested that they were thrown into the gap, that they didn't have training to do those things. The plaintiffs testified about the scope of their job duties. Well, if they were doing it, and it had to be done, didn't it, in a sense, become de facto part of what their duties? Well, the court could send a janitor into the nuclear reactor to clean up the glowing water. It doesn't mean it's part of his job duties. The court could send a law clerk downstairs. But that wasn't a one-shot thing. This is the way the whole thing was going on. And it shows how long the state ignored the problem because they wanted to save money. But so they had these people doing it. Now, what's that have to do with whether or not it was one of their job functions? Because that's not what they were paid to do, Your Honor. If the court looks at page 3655 of the appendix, when Defendant McLeish himself was sending plaintiffs for fitness for duty exams to see if they were physically able to perform their job duties, he said attached is this job description. This is their job description. Dr. Green, take a look at this document. This is what they're employed to do. This talks about their duties, conducting biannual firearms training. Are you suggesting that a written job description is dispositive of the question of what their job functions for purposes of the Garcetti analysis? I'm saying it's one factor of many, Your Honor. I believe I listed approximately 11 or 12 in my brief. But this is from the time frame at issue. This is a document sent by the defendant himself saying what plaintiff's job duties actually were. And actually, they break it down into percentages of the job. Thirty-five percent conduct biannual firearms training. Twenty percent develop training programs. Fifteen percent conduct recruit training. Fifteen percent armor duties. Fifteen percent research and miscellaneous administration. There was other testimony on that last factor about what that entails. That entails testing out new shotguns, the Glock, the MP4, handguns, things like that. When the use of force policy becomes a question, they test it out. When a trooper encounters a situation on the street and isn't sure how to respond, they develop the training policies for the realistic tactical training, the low-light training, the Columbine rescue training. Your Honor, you don't have to help me. I hope to understand the legal implication of what you're saying. Are you asking this court to make a determination as to what the job duties were of the plaintiffs on the basis of a record which was made prior to the Supreme Court's giving us instruction in Varsati as to what the constitutional inquiry was? Your Honor, I'm asking the court to recognize that because of the defense theory of the case, the scope of plaintiffs' job duties was tried. It's even recognized in the pretrial order, DI-123, under the uncontested issues of fact and law, number three talks about this, Your Honor. It talks about how whether the issue being tried is whether plaintiffs were derelict or neglectful in their job duties. It goes on, even under plaintiff's statement of contested issues of fact, number 11, number 13, and number 15 all speak in some way, shape, or form to the scope of their job duties. I'm sorry, Your Honor. Even under the defendant's statement of contested issues of fact, number four and number six speak in some way to the issue of job duties. I guess what I'm wondering is this. Doesn't the defendant's position, and indeed your position at trial, have bearing with respect to a judgment ultimately to be made, whether it's by this court or by the district court and or with the assistance of a jury, going back to the colloquy between you and Judge Greenberg, but doesn't that have to involve a set of determinations made afresh now that the Supreme Court has told us, by saying what the Constitution calls for, a set of precepts that were not before the trial court in the trial you're conducting? I don't mean to throw away whatever instruction comes from that trial. But when the same issue is before the jury, when the same issue is before the trial court, for another reason, that's fine, but the issue of job duties, because they were blaming the plaintiffs for destroying the FTU. The scope of the plaintiff's job duties also was an issue because of Sgt. Foraker's case. Sgt. Foraker has since settled, but he had a defamation claim, claiming that the accusation that he had dropped the ball and allowed the FTU to be destroyed, he said that was false. Col. Chappage claimed it was true. We presented evidence, the jury ultimately found, by clear and convincing evidence, one is that it was false, two is that it was false and it was made with actual malice. The issue was tried from a number of different perspectives, Your Honor, and ultimately that issue was before the jury, which is why it's not a brand new issue. And I think, Your Honor, also it's irrelevant to the petition clause issue as well. I think Garcetti is a free speech case, it is the landscape, that is what it is. But under the petition clause, speaking to the state auditor is clearly a mechanism. It's set up in the Delaware Constitution of 1897. It has duties set up under the Delaware Code. It was a mechanism, however, the use of which, in this case, came about directly as a result of the plaintiffs reporting up the chain of command. Your Honor, plaintiffs did create a stink-up. They created a massive stink internally. They did, and that's what caused the auditor, through, as I understood the record, a directive from the governor's office. Well, Your Honor, the governor's office is an elected office. Yes or no, is that what occurred or not? If I'm wrong, I want you to tell me. I believe the court is mistaken. The governor's office is an elected office. I don't want to know whether they're elected or appointed or whatever. Did the governor's office direct the auditor to go back to the plaintiffs in this case and do so as a direct consequence of the plaintiffs having reported up the chain of command? The governor's office, as well as several legislators, asked the state auditor's office to investigate the overall FTU fiasco. That did occur, Your Honor. And the plaintiffs were effectively ordered. In fact, didn't one of them testify to that? One of them did testify to that. It was my duty. I was ordered to. One of them did testify to that, Your Honor, and that goes to the scope of job duties. How do you interpret job duties? It's a broad general order which applies to all state agencies. The governor also ordered facilities management to comply, also ordered the state version of the EPA to comply. It would be more clearly, by definition, one's job duties than having been ordered to do something by your superior. One is they're not paid to participate in auditor's investigations. That is not, as I read Carcetti, and heaven knows I've read it enough times and re-read it enough times for whatever guidance it can provide. Well, it's part of your job duty. It is. I do very few things as a matter of volunteerism here. I don't see that as dispositive, do you? I see one sentence that Justice Kennedy used where he refers to the tasks he was paid to perform. The rest of the opinion talk about official duties, official duties, and finally tell us this is a practical question. For us to resolve, which provides a debatable amount of guidance. But also in that same sentence, in that same paragraph, as the practical suggestion, it also says to avoid, quote, excessively broad job descriptions. A broad general order for all state agencies, all state employees, from the governor, of course, but a broad general order nonetheless, you have to cooperate with another state agency. That's nothing new. This was specific, wasn't it? No, Your Honor. The governor's office ordered everyone to cooperate, not just the state police, not just plaintiffs, facilities management, the division who... Well, I mean, it was specific, though, as to a particular problem, wasn't it? As to what was the cause of the problems at the firearms trade union. In other words, it's not like there was a standing order from the governor to all state employees to cooperate in all matters of any nature with the state order. It's not that particular. But in essence, that's what it is, Your Honor. And then plaintiffs, then they take that. They had been independently investigating the problems, researching solutions, contacting experts in the field, compiling documents. And ultimately, they do speak to the state auditor. And they give these written auditor statements, which talk about a lot more than just health and safety issues. They talk about government misconduct. Wayne Warren's auditor statement found at page 3166 of the appendix talks about the flawed selection process, how the state hired the contractor to finish dead last in the bid rankings, how the reviewing contractor said that the HVAC system will not work, will inevitably fail its design if installed. Talks about how there was cost-cutting with no concern for health and safety. Talks about how the contractor built the building and the roof began caving in because they built it wrong. They didn't put enough support beams in. Talked about the effect that had on the ventilation system, how they removed the sprinkler systems from the building even though they stored explosives and flashbang grenades there. They talked about how there was no certificate of occupancy. Things like that, Your Honor. Plaintiffs talked about a great more than just health and safety. And I believe as a result of the defense theory of the case that they were to blame for all the problems at the FTU by the jury rejecting that claim, the jury accepting plaintiff's evidence. The jury tried the issue of the scope of plaintiff's job duties and what those duties entailed. As a result, it's a jury issue and the jury determined it and that determination is entitled to deference, Your Honors. Thank you. We'll have you back on rebuttal, Mr. Newberger. Mr. Ellis? Thank you, Your Honor. May it please the Court, my name is Ed Ellis and I represent Aaron Chaffinch, the former superintendent of the Delaware State Police and Thomas McLeish, the current superintendent of the Delaware State Police. Your Honors, in Garcetti v. Ceballos, the Supreme Court made a value judgment, a policy judgment for the court system and for the United States in general. It held that when public employees speak pursuant to their official duties, they do so without First Amendment protection against retaliation. As we all know, this case was tried as Garcetti was being decided. There is a verdict in the case, but Judge Sleet in the court below found that after the verdict, he still had some work to do based on the Garcetti decision. The case of Hill v. Burr of Kutztown, which is a Third Circuit case decided after Garcetti, it's very clear that the trial judge has the duty to determine the official duty question while at the same time deciding the overall question of whether the speech is protected. With that extent, suppose, for example, part of the argument over what the official duties were was whether a particular paper had ever actually been promulgated. And the defendant said yes, and that set forth duties. And the plaintiffs would say that was never promulgated until later. And therefore, who would decide that kind of issue? In other words, at the time of the matters at issue, the plaintiffs said that paper didn't exist, and the defendants said yes, it did. So who decides that? Your Honor, as I read Hill, it seems to me that that's a judge question because it's part of the overall question of whether the speech is protected. So what you're saying is that what would be ordinary? That would be a perfect example of a question of fact. Absolutely, Your Honor. But what you're saying is that if it's part of that question, the judge decides it even though he or she, in this case me, is deciding the facts. But if it's some other context, it really wouldn't decide that. I think that's right, Your Honor, and I would analogize it to the defamation cases where the court has to decide whether a particular statement is susceptible to defamatory meaning. That would be another example of something where the judge actually decides a question that I guess you could call a mixed question of fact and law. That's a little different because I intentionally gave you an example that was a pure historical inquiry. It's a hard question. When I say hard, I mean difficult, and it's a hard fact. I recognize that, Your Honor. As I read the case law, that's part of what the trial judge has to decide. I think that's consistent with Conant v. Myers and Pickering v. Board of Education. I must say that I have not been able to find a case where that issue was actually at issue in the decision and had to be decided one way or another. The cases generally go like the Hill v. Kutztown case, which simply states that that's part of the overall decision-making process of the trial judge. I'm sorry, Your Honor. Why should that be? If I'm hired to be a teacher at a law school, and ultimately there turns out to be a dispute as to whether it's part of my job to serve as an advisor to the Newman Club. I expressed my understanding that I thought I was just to go in and teach classes and I'm all in favor of the Newman Club or Hillel or whatever it may be, but that's not my job and it's not much I know about. The dean who has presided at my selection says, of course that's part of your job, and indeed you know it. We talk to you about what we do in this school. All of the faculty have those kinds of responsibilities. Is that a dispute that is to be determined by a court rather than by a jury? Your Honor, based on the case law that I've seen, it's a little bit unclear from your hypothetical how that would become a First Amendment claim. Presumably it would be because you declined to assist a religious organization or something along those lines. Or was it appropriate for me to be making a public statement about, and to whom would I make such a public statement, about the activities of the Newman Club and the relation of that to the general activities of the students who were being instructed? And the dean takes the position, you talk to me about it and nobody else. Or certainly when you go off half-cocked and talk to the press or the state auditor, you're talking about something that's your official duty and it's not protected activity. Your Honor, if you're asking me could the policy decision go otherwise and make that a jury question as opposed to a judge question, I certainly think it could. I think that the theory behind making that type of question a judge question is because it's inherently a difficult question and one that can invoke a lot of emotion because of the type of question it is and because of the First Amendment involvement. And that is the way the courts have done it. As I said, I can't point you to a case that says one way or another in the type of hypothetical either you or Judge Greenberg are dealing with. If I could just make one point though, Your Honor, I don't think that this is the type of case where that should matter because the evidence of what these individuals did is overwhelming on the record. And were this in fact a summary judgment situation pre-trial, I don't think Judge Gleeson would. What you're saying is that this is not a case that's really dependent upon the resolution of historically what happened. Because we know pretty much they were complaining that I didn't have to do this and so forth, but in fact we know what they did. Right. The record, Your Honor, is clear that for five years and then some, every individual assigned to the firearms training unit in that building performed maintenance activities. They didn't like it and there's testimony to the effect that they complained about it to whoever the boss was at the time. But the record from Mr. Warren or Wayne Warren's testimony, Kirk Price's testimony, Chris Foraker's testimony, is overwhelming that they did this activity. And it's also overwhelming that they reported things that were wrong. And if you even look at something as basic as the facilities management log, which records the phone calls being made into facilities management from the firearms training unit, you'll see that there's every name or every person who ever worked there at one point or another made a call to complain about the HVAC or the roof leaks or something having to do with the facility wasn't performing the way it was supposed to. And there is a record of complaints up the chain of command as well. So with that record that has been made and that is before us now, what you are suggesting remains is a legal question for us as to whether or not that historic record demonstrates that these public employees were speaking as citizens or whether they were speaking as official state employees. That's correct, Your Honor. How about this question of the trial by consent? What do you have to say about that? That's the Rule 15a issue, Your Honor. Yeah, that's what you have to say. Your Honor, I think that if you look at the case law under Rule 15a, in order to amend a complaint after trial, after verdict for that matter, you would have to have, number one, a recognition by the parties that a particular issue was entering into the case. You would have to have introduction of evidence that would, in effect, tee up the issue for the jury. And there's got to be some indication that the jury is deciding the case as well. I think our brief addresses the precise requirements. The only evidence, I mean, the case was tried. The case started out with two types of expression. Number one was the expression up the chain of command about conditions in the range. And there are, I think, three key e-mails that are at issue in this exhibit, plaintiffs 40, 41, and 42. And then there's a number of meetings that occurred between Colonel McLeish and the plaintiffs about conditions at the range and what was going to be done. That's the first. And the second was speaking to the auditor. Now, in the course of the trial, there was evidence submitted as to response to statements made by Mr. Neuberger to the press. But that was admissible because it tended to show the existence of animosity on the part of the two defendants to the substance, not to the fact that it was done to the press or by Mr. Neuberger. One of the requirements under the Third Circuit law for Rule 15a amendment after the trial would be that not only that the issue enters the case, but it be raised by evidence that isn't proven of any other issue currently in the case. So thus, we as a defendant have no knowledge that you were actually going to try the case on a third issue. So I don't think it meets the criteria. I think we set that forth in the brief. If I could turn briefly to— I certainly couldn't agree with that more, Your Honor. So usually it's a losing issue. Your Honor, I could turn to one other, what I hope is a losing issue, is the issue of the petition clause. What occurred here, the argument that the plaintiff is making, is that Garcetti doesn't apply to a petition case. And as you know from the record, the case was initially filed as a free speech case, and an amendment occurred partway through the case to add a petition clause. The petition clause amendment occurred as a count, but not with any change in the allegations of the complaint. In other words, it was just a rebadging of the case. At what point in time did that amendment occur? It was roughly halfway through discovery, Your Honor, give or take a month or two. We did not oppose it because under Rule 15, amendments are to be granted liberally, and it was not a contested issue at the time. I think that if you deal with petition clauses, you have to deal with the San Filippo case in the circuit. It is a cogent and brilliantly written opinion, too, I might say. I couldn't have said it better, Your Honor. Who ever could say it better? Who wrote that opinion? The gentleman to my left. With some disagreement by your late colleague. I thought that the people here should know that. I certainly know it, Your Honor. I think the significance of the San Filippo case is not so much in its holding because the San Filippo situation and the Garcetti situation are never going to overlap because San Filippo has to do with filing a lawsuit, and a Garcetti case would never involve filing a lawsuit because filing a lawsuit would never be within the official duties of the plaintiff. But one of the observations, a couple of the observations Judge Pollack makes in the San Filippo case are important here, in particular, is that if you don't have an invocation of a formal mechanism, then it doesn't appear that the Supreme Court gives any greater protection to a petition claim than it does to a free speech claim. And the best example of that would be McDowell v. Smith, which is the Supreme Court case involving a letter to the President concerning the appointment of the U.S. Attorney. So I did want to make sure I addressed that. I speak to a big thing, the appointment of the U.S. Attorney's Attorney. Mr. Ellis, whether taken as a petition or a free speech issue, as I sit here, I don't really see much distinction. Are you really quite comfortable with the thought that talking to the auditor is the same as talking to, quote, up the chain of command? In Garcetti terms, I don't think it's the same. Your Honor, I don't think it's the same. As to whether those are congruent. Your Honor, I don't think that speaking up the chain of command is exactly the same thing as speaking to the auditor. And I'm about to run out of time, but if I could, I'd like to explain that. You have time. Judge Smith, you made an observation earlier that I think ties in with this. The way that the auditor's investigation got started was not directly as a result of what the plaintiffs here did. The record, I think, would show that the plaintiffs raised their concerns up the chain of command. One of the people in the chain of command, which is Captain Greg Warren, not Wayne Warren, went to the press or was interviewed by the press. It made a splash in the press. The governor then reacted to the splash in the press, asked the auditor to do the investigation. Now, to get back to Judge Pollack's point, my view of that, Your Honor, is that anytime an employee, in this case a public employee, is called to account for things that occur within the scope of their duties, within the scope of their job, that's within their official duties under Garcetti. Whether it's the auditor, whether it's the boss calling somebody in, whether it's the governor. It's a function of anyone's job in the public sector to account for what they do. If that answers your question. I don't have any questions. Thank you very much, Mr. Ellis. Newburger, rebuttal. Thank you, Your Honor. Your Honors, the petition clause protects different interests than the free speech clause protects. The petition clause is there to protect you when you're speaking to government, asking government to fix a problem that the government has caused. The free speech clause is in the First Amendment to protect your right to talk to the citizenry, the voters. The Supreme Court has expanded that. They expanded that in the given case. They expanded the scope of the free speech clause. But just because it can be argued that it is now being cut back on doesn't mean that things which would otherwise have been protected by the petition clause for three, four hundred years is also being cut back. If you invoke a formal mechanism, such as the auditor's office, which is set up under the Delaware Constitution, the petition clause, I think it plainly fits within San Filippo. And I would urge the court to read plaintiffs' written auditor statements and specifically what they talk about. Because an order can be given to speak to someone, but in the end you have to look at what was actually said during that meeting. Plaintiffs were not paid to, they were not employed to investigate wrongdoing at the FTU. They weren't there to criticize the contractor that originally built the building. They weren't there to criticize facilities management, excuse me, facilities management, and the group from the state of Delaware that awards contracts and couldn't count to five. They couldn't see that the three votes that said give it to Clark Nexon, the real contractor, where three was greater than two, who said give it to the bottom-ranked company that actually built the building. That's not why they're there, Your Honor. The petition clause protects different interests. If the court reads, as I'm sure the court has, if the court reads the written auditor statements, I think you see that the scope of what plaintiffs were talking about is different. And the petition clause protects interests of that type, separate and independently from that of the free speech clause. Thank you very much. We're going to take a brief recess. No more than five minutes. We'll be back. Please rise. The court is now at recess. We'll get to the next and last argument.